## Commonwealth v. Riley

*N. H. Larzelere*, district attorney, for Commonwealth.

*Leonard F. Markel, Jr.*, for defendant.

KNIGHT, P. J., July 22, 1953.—On the night of January 31 or the early morning of February 1, 1953, a police officer of the Borough of Norristown found the body of a child wrapped in a cloth and some paper by a tree on Willow Street in Norristown.

Subsequent investigation developed the following undisputed facts:

On Saturday afternoon, January 31, 1953, Bernice Riley, an unmarried Negro girl, 29 years old, who resided in Philadelphia but was employed in New York, came to Norristown to attend a wedding recep-

tion. Bernice Riley was pregnant and the day before she came to Norristown she had attempted to perform an abortion on herself using a stick of slippery elm. While at the reception, she felt labor pains, went into the bathroom where the child was born. She saw no signs of life and wrapped the fetus in a piece of cloth and some toilet paper, put it under her coat, left the house, took the package two doors from 1215 Willow Street, the home from which she came, and deposited it along the sidewalk by a tree where it was found by the police officer a short time thereafter. Bernice Riley returned to 1215 Willow Street. where she became seriously ill; the police were notified and she was removed to the Montgomery Hospital, where she was treated and subsequently recovered. At the hospital she gave the police a statement as to what she had done and later on the witness stand reiterated the facts as contained in the statement. Dr. John Simpson performed an autopsy on the fetus and testified that in his opinion it was a five and one-quarter months Negro male fetus. The physician further testified that there was no evidence of external injury, that the lungs were not expanded, showing that the baby had never breathed and that in his opinion the fetus was stillborn, that is, born dead. Dr. Schackleford of the staff of the Montgomery Hospital, examined the fetus and gave his opinion that it was from four to five months old. Dr. Simpson also testified that a fetus less than six months old was incapable of external existence, whether it is born dead or alive. Bernice Riley testified that in her opinion, she was three months pregnant when the abortion was committed.

Under these sordid and unpleasant facts, Bernice Riley was indicted under section 720 of The Penal Code of June 24, 1939, P. L. 872, which reads:

"Whoever, being a woman, endeavors privately, either by herself or the procurement of others, to con-

ceal the death of her bastard child, so that it may not come to light, whether it was born dead or alive or whether it was murdered or not, is guilty of a misdemeanor, and upon conviction thereof, shall undergo imprisonment, by separate and solitary confinement at labor, not exceeding one (1) year, or fined not exceeding five hundred dollars ($500), or both."

Counsel for defendant in his brief gives an interesting summary of the legislative history of this statute which we have taken the liberty to quote: "The court's attention is directed to the fact that section 720 of the Criminal Code of 1939 reënacted in substance the provisions of an earlier Act of March 31, 1860, P. L. 382, section 89. While the exact wording of this section has been changed in the 1939 Code, the two sections are substantially identical. The substance of the offense is concealment of the death of a bastard child 'so that it may not come to light whether it was born dead or alive or whether it was murdered or not.'

"The original act which became a part of the law of Pennsylvania is Act of May 31, 1718, 1 Sm. L. 135. This original act provided in substance that a woman delivered of a bastard child who 'endeavors privately, by drowning or secret burying thereof, or any other way, to conceal the death thereof, as that it may not come to light, whether it were born alive or not, except such mother can prove by one witness, that such child was born dead, shall suffer death as in the case of murder.'

"The original Act of 1718 was founded upon and copied from the English Statute, 21 Ja. 1, c. 27.

"By the Act of September 15, 1786, section 9, and the Act of April 5, 1790, section 6, the original Act of 1718 was amended so that concealment of the death was not sufficient evidence to convict the mother without probable presumptive proof that the child was born alive."

In examining the section of the law under which defendant was indicted, it will be noted that it is not concealment of the birth but concealment of the death of a bastard child, "so that it may not come to light, whether it was born dead or alive or whether it was murdered or not," at which the statute is aimed: Douglas v. Commonwealth, 8 Watts 535 (1839) ; Commonwealth v. M. Brown, 1 Vaux 24.

Here there may be some evidence of a rather feeble attempt by Bernice Riley to divert suspicion from herself as the mother of the fetus, but was there any attempt to conceal the death of the child, if we can call it a child? True, she wrapped it in a cloth and some paper, but she deposited it along the sidewalk of a public street in a built-up section of the Borough of Norristown where it was bound to be discovered within a matter of hours, if not minutes. That this fetus was born dead and was incapable of external existence is supported by all of the evidence, and we hold that there was insufficient evidence that the death was concealed, certainly not enough proof to satisfy us beyond a reasonable doubt of that fact.

The act declares that its purpose is to prevent the concealment of the death of a bastard child in order that it may be ascertained whether it was born dead or whether it was murdered. This gives rise to the interesting questions of whether the fetus was "born", whether it was a "child" and whether it could be "murdered."

In Wharton's Criminal Law, vol. I, page 796, under the subject of Infanticide, the author states that: "To kill a child in its mother's womb is no murder." The evidence is that this fetus was born dead, hence if it was killed at all, it must have been killed in its mother's womb and therefore it could not be murdered and again we have the very purpose of the statute negatived.

In Trickett's Pennsylvania Criminal Law, vol. 2, page 588, in speaking of the elements of the crime, we are now considering it is said: "This crime cannot be committed unless a child is born." There is indeed a grave question whether this was a "birth" within the commonly accepted sense of the word. Birth does not necessarily connote life, but it does seem to encompass the arrival into the world of an organism which is capable of living. Here the Commonwealth's medical witness testified that this was a fetus not capable of living an external existence.

These are all interesting questions, but we base our decision on the fact that the Commonwealth failed to prove that there was a concealment of the death of this fetus or child.

An investigation of the decided cases discloses that this statute and its predecessors have rarely been before the courts.

The earliest reported case in Pennsylvania is Commonwealth v. McKee, 1 Addison's Reports 1 (1791), in which defendant was charged with murder of her bastard child. The case seems to have turned on the question of whether the child was born dead or alive. The verdict was "not guilty."

In Commonwealth v. Clark, 2 Ashmead 105 (1840), defendant was charged with murder and also under the statute.

The verdict was guilty. The judge pointed out that the concealment of death must not be simply to conceal that fact, but must be within the terms of the statute, namely, a concealment "that it may not come to light, whether it was born dead or alive or whether it was murdered or not."

In Commonwealth v. Brown, 1 Vaux 24, an indictment was held to be defective because it did not aver the death of the bastard child. It is the death, not the birth, that must be concealed.

Coming down to more recent times, we find but two

cases, both in the same volume of the Superior Court reports: Commonwealth v. Moll, 39 Pa. Superior Ct. 107, and Commonwealth v. Hessler, 39 Pa. Superior Ct. 115. In the latter case there was a conviction under the act which was sustained by the Superior Court. In that case defendant wrapped the child in paper and put it in a suitcase with clothing, intending to later bury it. She only disclosed its whereabouts upon questioning by the physician. This case can easily be distinguished on its facts from the case at bar.

The conduct of this defendant was most reprehensible, but regardless of how open to censure she may be from a moral and social point of view, we are constrained to hold her not guilty of the crime which the Commonwealth lays at her door.

And now, July 22, 1953, defendant is found not guilty and discharged. The costs are placed on the county.